LEON HERSON & others[1] vs. NEW BOSTON GARDEN
CORPORATION & others.[2]

No. 94-P-1285.

Suffolk. October 10, 1995. - July 24, 1996.

Present: ARMSTRONG, PORADA, & LENK, JJ.

*Indemnity. Contract,* Indemnity. *Statute,* Construction. *Negligence,*
Construction work. *Practice, Civil,* Interrogatories, Special questions to
jury, Failure to raise issue, Findings by judge. *Evidence,* Admissions and
confessions, Hearsay, Extrinsic affecting writing, Public documents.
*Words,* "Wilful misconduct."

The plain language of the unambiguous indemnification provisions of a
construction subcontract were without temporal limit and were enforce-
able three years after the subcontractor's completion of the work
[782-783]; moreover, the subcontract provisions placed no limitation on
the indemnitor's obligation so long as the injury was not solely caused
by the indemnitee [783-784]; finally, the insurance provisions of the
subcontract did not in any way limit the indemnity obligation [784-785].
General Laws c. 149, § 29C, did not void an indemnity agreement in a
construction subcontract where the language of the indemnity clause
limited the indemnitor subcontractor's obligations to cases in which
there is a causal connection between the indemnitor's work and the
injury and in which the injury was not caused solely by the indemnitee
[785-786,786-787]; further, the duty to defend was not encompassed
within the prohibition of that statute [787-788]; moreover § 29C does
not proscribe full indemnification when the conduct of the indemnitee
was only a partial cause of the injury [788].

---

[1]Shirley Herson, and Denise A. Worobey, executrix of the estate of Den-
nis J. Worobey. The Herson and Worobey lawsuits were filed separately
but were consolidated for trial.

[2]Each plaintiff sued Stockton Electrical Co., Inc. (an electrical
subcontractor during the 1990 work); Bechtel Civil Inc. (Bechtel) (the gen-
eral contractor); New Boston Garden Corp. (NBG) (the owner); Ohio
Switchgear, Division of Ohio Transformer, Inc. (manufacturer and supplier
of switchgear which Mass Electric installed in 1987); and Massachusetts
Electric Construction Company, Inc. (Mass Electric). NBG and Bechtel
each asserted claims against the other as well as against Mass Electric,
Stockton Electrical Co., Inc.; F.H. Newton Electrical Co., Inc. (an electri-
cal subcontractor during the 1990 work and the plaintiffs' employer); and
Nelson M. Brown (foreman at Stockton Electrical Co., Inc.).

At a civil trial, the defendant's failure to raise an issue before the jury retired constituted a waiver of its rights to have the issue submitted on a special question to the jury and to argue the issue on appeal [788-789], and the judge's finding on the issue, pursuant to Mass.R.Civ.P. 49 (a), was supported by the evidence [789-790].

On a claim for indemnification, the judge did not err or abuse his discretion in refusing to ask the jury to assess the relative causal negligence of the parties for the underlying injury where the indemnification agreement required full indemnification irrespective of the apportionment of fault. [790]

At the trial of a civil action, the judge correctly excluded certain evidence proffered by the plaintiff as a vicarious admission where the alleged statement was not made by the defendant's employee concerning a matter within the scope of the speaker's agency or employment. [790-792]

At the trial of a civil action, the judge correctly excluded parol evidence regarding a signatory's understanding of a contract where there was no ambiguity in the contract provisions in issue. [792]

Three citations from the Federal Occupational Safety and Health Administration resulting from inspections of a construction site following an accident were properly excluded as evidence at a civil trial where they contained inadmissible hearsay and where evidence that a statute was violated would properly be admissible through evidence of the statute itself. [792-793]

A subcontractor indemnitor that was obliged to indemnify for personal injuries pursuant to the indemnification provisions of a construction subcontract was not entitled to a reduction in its obligation on account of the indemnitee's release of its claims against another subcontractor, where any rights of subrogation and contribution against that subcontractor were entirely speculative. [794-795]

CIVIL ACTIONS commenced in the Superior Court Department on March 12, 1991.

After consolidation for trial, the cases were tried before *Hiller B. Zobel, J.*

*Wm. Gerald McElroy, Jr.,* for Massachusetts Electric Construction Company, Inc.

*Mark E. Cohen* for Bechtel Civil, Inc.

*Thomas P. LaFrance* for New Boston Garden Corporation.

LENK, J. In 1987, appellant Massachusetts Electric Construction Company, Inc. (Mass Electric), installed switchgear in an electrical vault at the Boston Garden pursuant to a written subcontract with the general contractor, Bechtel Civil, Inc. (Bechtel). The subcontract contained an indemnification provision in favor of Bechtel and the owner, New Boston Garden Corporation (NBG).

In 1990, Leon Herson and Dennis Worobey, two employees of another electrical subcontractor, F.H. Newton Electrical Co., Inc. (Newton), were severely injured (Worobey later died) while working in the vault on high voltage equipment during another phase of the project at the Boston Garden. Herson and his wife and Worobey's estate each brought a lawsuit against, among others, NBG, Bechtel, and Mass Electric. NBG and Bechtel in turn asserted indemnification and contribution claims against, among others, Mass Electric. All the defendants settled Worobey's claims before trial; all the defendants except Mass Electric settled Herson's claims before trial.[3] The Herson lawsuit was tried to a jury which found Mass Electric causally negligent, assigning it 72.5 percent of the liability and Herson the remainder.

Mass Electric does not appeal from the jury verdict for Herson. Rather, it appeals from the judgment entered for NBG[4] on its indemnification claims, requiring Mass Electric to indemnify NBG fully for payments it made to settle with Herson and Worobey. As grounds, Mass Electric contends that the Superior Court judge erred: (1) in requiring Mass Electric to pay full indemnification to NBG; (2) in refusing to submit to the jury several special interrogatories; (3) in excluding certain evidence; and (4) in refusing to extinguish or reduce the amount of NBG's judgment for indemnification as a result of NBG's settlement with a coindemnitor. For the reasons discussed below, we affirm.

1. *The indemnification agreement.* The indemnification agreement in the subcontract between Mass Electric and Bechtel states:

> "Subcontractor [Mass Electric] hereby releases and shall indemnify, defend and hold harmless Owner [NBG] and Contractor [Bechtel] and their subsidiaries and affiliates and the officers, agents, employees, successors and assigns and authorized representatives of all of the foregoing from and against any and all suits, actions, legal or

---

[3]The parties stipulated that NBG paid $943,000 to settle Herson and $653,00 to settle Worobey, while Bechtel paid $545,000 to settle Herson and $450,000 to settle Worobey.

[4]Mass Electric's appeal from the judgment in favor of Bechtel on its indemnification claims was settled and dismissed after oral argument before us.

administrative proceedings, claims, demands, damages, liabilities, interest, attorney's fees, costs and expenses of whatsoever kind or nature including those arising out of injury or death of Subcontractor's employees whether arising before or after completion of the work hereunder and in any manner directly or indirectly caused, occasioned or contributed to in whole or in part, or claimed to be caused, occasioned or contributed to in whole or in part, by reason of any act, omission, fault or negligence whether active or passive of Subcontractor, its subcontractors or of anyone acting under its direction or control or on its behalf in connection with or incidental to the performance of this contract. Subcontractor's aforesaid release, indemnity and hold harmless obligations, or portions or applications thereof, shall apply even in the event of the fault or negligence, whether active or passive, or strict liability of the parties released, indemnified or held harmless to [the] fullest extent permitted by law, but in no event shall they apply to liability caused by the sole negligence or willful misconduct of the parties released, indemnified or held harmless."

Mass Electric contends that the trial judge erroneously applied this provision because (a) it is grossly unfair to interpret it to apply to NBG's independent liability for an accident occurring three years after Mass Electric performed the construction work that was the subject of the subcontract; (b) to the extent the provision applies at all, it applies only in proportion to the percentage of Mass Electric's causal negligence measured against NBG's causal negligence; and (c) the provision is void ab initio since it does not limit Mass Electric's indemnification responsibility only to accidents caused by Mass Electric.

   a. *Unfairness.* Indemnification provisions are to be read without any bias for the indemnitor or against the indemnitee. They are to be interpreted like any other contract, with attention to language, background, and purpose. *Speers* v. *H.P. Hood, Inc.*, 22 Mass. App. Ct. 598, 600 (1986). Mass Electric's assertion that it was unfair for the judge to declare the indemnification provision applicable rests on its view that temporal factors, NBG's alleged independent subsequent negligence, and the insurance provisions of the subcontract

agreement must all be taken into consideration in construing and ascertaining the applicability of the indemnification provision. The plain language of the unambiguous indemnification provision here defeats Mass Electric's thesis.

Notwithstanding the fact that Herson's injury occurred well after Mass Electric had left the job site, no temporal limits upon Mass Electric's indemnification obligation appear in the subcontract. That agreement states that Mass Electric "shall indemnify, defend and hold harmless [NBG] . . . from and against any and all suits, actions . . . damages, liabilities . . . whether *arising* before or *after* completion of the work hereunder" (emphasis added). The jury found Mass Electric causally negligent for the work it performed in 1987 which injured Herson in 1990. The language of the indemnification clause encompasses just such temporal lags and there is nothing unfair in this regard about holding Mass Electric to its agreement.[5]

b. *Proportional liability.* The jury made no finding regarding NBG's alleged causal negligence. Nonetheless, Mass Electric dwells upon what it contends was sufficient evidence at trial establishing NBG's independent negligence,[6] which occurred long after Mass Electric completed work on the 1987 project phase. Mass Electric argues that a reasonable construction of the indemnification agreement would not permit NBG to be indemnified for such negligence. Instead, at most, NBG should be indemnified only for NBG's indivisible, concurrent liability arising out of Mass Electric's performance of work.

Once again, Mass Electric is thwarted by the plain language of its indemnity undertaking, which contains no limitation upon Mass Electric's obligations even where there is separate and intervening negligence by NBG. So long as the injury was not caused by NBG's "sole negligence or willful misconduct," the contract requires indemnification even "in

---

[5]Mass Electric also contends that it did not intend, when it signed the subcontract, to indemnify NBG for anything more than indivisible, concurrent negligence occurring during the 1987 project phase. As discussed *infra* at 791, the trial judge was correct to exclude evidence regarding such intent in view of the unambiguous contract language.

[6]Mass Electric argues that NBG was causally negligent because it failed to call Boston Edison to arrange a shutdown of electricity to Boston Garden and the electrical equipment there on which work would be performed.

the event of the fault or negligence" of NBG. The jury's un-appealed verdict establishes that Herson's injuries were not caused by NBG's "sole negligence." Further, the agreement does not in any way qualify Mass Electric's indemnity obliga-tion by limiting it to instances where NBG's negligence is in-divisible and concurrent with that of Mass Electric.

Similarly, Mass Electric's contention that the insurance provisions of the subcontract limit its indemnity obligations is unavailing.[7] There is no reason to think that this provision

[7]"INSURANCE: The Subcontractor shall, at its sole expense, maintain in effect at all times during the performance of the Services insurance coverages with limits not less than those set forth below and with insur-ers and under forms of policies satisfactory to Contractor.

| Coverage | Minimum Amounts and Limits |
|---|---|
| a) Workers Compensation | Statutory requirements at location of work |
| b) Employer's Liability | To extent included under Workers Compensation Insurance Policy |
| c) Comprehensive General Liability | |
| (i) Bodily Injury | $500,000 each occurrence |
| (ii) Property Damage | $100,000 each occurrence |
| d) Comprehensive Automobile Liability (Owned, Hired and Non-owned) | |
| (i) Bodily Injury | $500,000 each person |
| | $500,000 each occurrence |
| (ii) Property Damage | $100,000 each occurrence |

"Combined single limit policies are acceptable provided the combined single limit of each policy for Bodily Injury and Property Damage Liability is not less than $500,000 each occurrence. These policies may contain an aggregate limit not less than the occurrence limit. The required limits may be satisfied by a combination of a primary policy and an excess or umbrella policy.

"Coverage (c) shall apply to the indemnity agreement in paragraph 2 above, and shall include Owner and Contractor, their officers and employees, each as additional insureds but only as regards their li-ability arising out of Subcontractor's performance of the work or out of operations performed by others in behalf of Subcontractor under this Subcontract. The insurance as afforded to such additional in-sureds shall state that it is primary insurance and shall provide for a severability of interest or cross-liability clause. Prior to commencing performance of any work or site mobilization, Subcontractor shall

functions as a temporal constraint upon the application of the · indemnity obligation rather than as an additional means of providing financial protection for NBG and Bechtel. The last paragraph of the insurance clause says as much.

c. *General Laws c. 149, § 29C.* We turn to Mass Electric's argument that even if the language of the indemnity agreement would otherwise require full indemnification, G. L. c. 149, § 29C, forbids this result.[8] The statute, Mass Electric contends, either voids the indemnity agreement ab initio because it does not limit Mass Electric's indemnification responsibility solely to accidents caused by Mass Electric or because the statute imposes the limitation that there be indemnification only for Mass Electric's proportional causal negligence.

General Laws c. 149, § 29C, as amended by St. 1986, c. 557, § 135, states in relevant part:

> "Any provision for or in connection with a contract for construction . . . which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void."

Mass Electric argues (1) that, under the subject contractual indemnity provision, the duty to indemnify is triggered not

furnish Contractor with Certificates of Insurance (identifying on the face thereof the Project name and Subcontract number) as evidence of the above required insurance and such Certificates shall provide for thirty (30) days written notice to Contractor prior to cancellation thereof.

"Contractor is not maintaining any insurance on behalf of Subcontractor covering loss or damage to the work or to any other property of Subcontractor unless otherwise specifically set forth herein.

"None of the requirements contained herein as to types, limits, and approval of insurance coverage to be maintained by Subcontractor are intended to and shall not in any manner limit or qualify the liabilities and obligations assumed by Subcontractor under this Subcontract."

[8]The subcontract was executed in 1987, after the effective date of G. L. c. 149, § 29C, and the statute accordingly applies.

when a finding of Mass Electric's fault is made but whenever it is "claimed" that Mass Electric is responsible for an injury, and (2) that indemnification is required even when Mass Electric is not causally liable, where its "act" in some manner "occasioned" a plaintiff's injuries. Accordingly, Mass Electric reasons, the provision is void ab initio under § 29C.

In determining the validity of an indemnity provision under § 29C, it is upon the language of the indemnity clause that we focus rather than upon a finding of the facts of the particular accident and an assessment of fault of the parties. *Harnois* v. *Quannapowitt Dev., Inc.*, 35 Mass. App. Ct. 286, 288 (1993); *Callahan* v. *A.J. Welch Equip. Corp.*, 36 Mass. App. Ct. 608, 611 (1994). This furthers the loss shifting function of the statute and clarifies where the burden of acquiring insurance lies. *Harnois, supra.* Mass Electric argues that the language of the clause impermissibly allows the duty to indemnify to be triggered, not at a time after it has been proven that Mass Electric in fact caused an injury, but instead whenever merely a claim is made that Mass Electric did so. To the extent that Mass Electric suggests that § 29C forbids determinations to be made prior to trial as to the validity and enforceability of an indemnity clause — thereby triggering the subcontractor's duty to indemnify — this suggestion has no merit for the reasons already stated. Nothing in the subject indemnity clause requires that indemnity payments be tendered unless and until it has been proven that Mass Electric caused the injury.

Mass Electric also argues, however, that insofar as the subject clause contains duty to defend language (arguably requiring immediate payment of the indemnitee's defense costs) capable of being triggered solely by virtue of the assertion of a claim against the subcontractor-indemnitor whose causal fault, if any, for the injury giving rise to the claim has not yet been determined, the indemnity clause as a whole offends § 29C. Assumptions critical to this contention are that the duty to defend is encompassed within the duty to indemnify or that, if the two are separate duties, the duty to defend is nonetheless within the protective ambit of § 29C.

The duty to defend in the subject clause is a duty independent of and broader than the duty to indemnify. See, e.g., *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 10 (1989); *Urban Inv. & Dev. Co.* v. *Turner*

*Constr. Co.*, 35 Mass. App. Ct. 100, 107-108 (1993).[9] Section 29C makes no reference to "duty to defend" undertakings by subcontractors, but is limited to subcontract provisions which require a subcontractor "to indemnify." Had the Legislature wished to encompass the often utilized "duty to defend" provisions within the protective ambit of § 29C, it presumably would have said so expressly.

We interpret the language of the indemnity clause, taken in its entirety, as limiting Mass Electric's indemnity obligation to cases in which there is a causal connection between Mass Electric's work and the injury. The language of the clause thereby avoids the nullifying effect of § 29C, notwithstanding Mass Electric's attempt to differentiate the statutory language of "caused by," from the indemnity clause's language "occasioned . . . by reason of any act, omission, fault or negligence whether active or passive of [Mass Electric]." There is no meaningful distinction between the two since the disputed language in context is the functional equivalent of "caused by." See *M. DeMatteo Constr. Co.* v. *A.C. Dellovade, Inc.*, 39 Mass. App. Ct. 1, 3-4 (1995). Even if this were not so, NBG's contractual indemnity obligations "shall apply . . . to [the] fullest extent permitted by law, but in no event shall they apply to liability caused by the sole negligence or willful misconduct of the parties . . . indemnified." This limitation also permits the conclusion that the indemnity clause is not void under § 29C. See *Callahan*, 36 Mass. App. Ct. at 611.

Finally, Mass Electric urges, without citation to any appellate authority, that § 29C proscribes an interpretation of the subcontractor's indemnity clause which requires it to indemnify NBG for costs arising out of NBG's own distinct negligence which Mass Electric did not cause. Mass Electric's position is that § 29C requires apportionment, a position

---

[9]Mass Electric maintains that, in noninsurance contracts, the obligation to indemnify includes the obligation to defend and that, because the defense obligation is thereby integral to the indemnity obligation, § 29C applies. It has been held that when a right to indemnify is conferred, but no provision has been made as to defense costs, the indemnitee may also recover reasonable and necessary defense costs incurred in resisting a claim within the compass of the indemnity, see, e.g., *Amoco Oil Co.* v. *Buckley Heating, Inc.*, 22 Mass. App. Ct. 973, 973 (1986) (citations omitted). However, this has no application to circumstances where, as here, the indemnity clause expressly imposes a separate obligation to defend the indemnitee.

which we reject. Section 29C only voids contractual indemnity provisions which require indemnification for injuries not caused by the subcontractor. General contractors and owners are prohibited by § 29C from receiving indemnity for their sole causal negligence, but § 29C does not proscribe full indemnification when the conduct of the subcontractor is only a partial cause of the injury. See *Collins* v. *Kiewit Constr. Co.*, *post* 796 (1996). Otherwise put, § 29C does not prohibit contractual indemnity arrangements whereby the subcontractor agrees to assume indemnity obligations for the entire liability when both the subcontractor and the general contractor or owner are causally negligent. See *Harnois*, 35 Mass. App. Ct. at 288, and *Callahan*, 36 Mass. App. Ct. at 611-613. Had the Legislature intended thus to abrogate the common law, which long permitted by written contract full indemnification of an indemnitee even where the indemnitee was negligent, see, e.g., *Kelly* v. *Dimeo, Inc.*, 31 Mass. App. Ct. 626, 629-630 (1991), it would have done so explicitly.

2. *Special interrogatories.* Mass Electric complains of the trial judge's refusal to submit to the jury interrogatories (a) to determine whether NBG committed wilful misconduct by failing to request a shutdown of electricity by Boston Edison to the work site before allowing Herson to work on the electrical equipment and (b) to determine Mass Electric's percentage of negligence relative to parties other than the injured plaintiff Herson. There was no error.

After the jury had retired and reported its answer to one of the special questions, Mass Electric belatedly requested that the trial judge submit a new special question to the jury regarding NBG's alleged "wilful misconduct." As Mass Electric failed to raise the issue before the jury retired, it waived its right to have the question submitted to the jury, and its right to raise the issue on appeal. Mass.R.Civ.P. 49(a), 365 Mass. 813 (1974). *Hawco* v. *Massachusetts Bay Transp. Authy.*, 398 Mass. 1006 (1986). Mass.R.Civ. P. 49(a) provides:

> "If in [submitting special questions to the jury] the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury."

The trial judge had given counsel for all parties ample op-

portunity to make requests for special questions both before the jury was charged, and again after the charge, but before the jury retired. There is therefore no excuse for Mass Electric's failure to propose the additional special question in a timely fashion.

Mass Electric argues that, because "wilful misconduct" by NBG was a "valid theory of defense that is supported by sufficient evidence," the trial judge abused his discretion by refusing to submit the special jury question. Mass.R.Civ.P. 49(a) provides for the situation where an issue is omitted by the trial judge, and no party objects in a timely fashion:

> "As to an issue omitted without such [timely] demand [for a special jury question], the court may make a finding . . . ."

In the case at bar, the trial judge did make such a finding, that "on all balance there was no evidence of willful misconduct." An appellate court is to leave such a finding undisturbed unless it concludes that it is "clearly erroneous." See *Hawco, supra*; Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Freyermuth* v. *Lutfy*, 376 Mass. 612, 615 (1978) (citations omitted).

The concept of "wilful misconduct" is elucidated in *Manning* v. *Nobile*, 411 Mass. 382, 387 (1991), as follows:

> " '[W]ilful, wanton, or reckless' conduct [is] 'intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another.' "

*Ibid.*, quoting from *Commonwealth* v. *Catalina*, 407 Mass. 779, 789 (1990), quoting from *Commonwealth* v. *Welansky*, 316 Mass. 383, 399 (1944). There was ample support in the evidence for the trial judge's finding regarding wilful misconduct by NBG.

As to the judge's refusal to ask the jury to assess the relative causal negligence of the parties, we discern neither error

nor abuse of discretion. In view of our determination that the valid indemnification clause in the subcontract requires Mass Electric to indemnify NBG fully irrespective of whether NBG also was causally negligent, the omission of this interrogatory (a matter left, in any event, within the judge's broad discretion, see *Everett* v. *Bucky Warren, Inc.*, 376 Mass. 280, 291 [1978]), was without consequence to the judgment from which Mass Electric appeals.

3. *Excluded evidence.* Mass Electric claims that the trial judge erred in excluding (a) the testimony of its employee James McCellan regarding a vicarious admission made to him by an NBG employee; (b) the testimony of its employee Dennis DaRu to the effect that he would not have signed the subcontract had he understood the indemnification provision to require Mass Electric to indemnify for anything other than liabilities arising out of Mass Electric's work on the subcontract; and (c) Occupational Safety and Health Administration (OSHA) citations received by NBG and other entities in connection with their role in the 1990 accident in which Herson was injured. We discern no error.

(a) *McCellan testimony.* Mass Electric proposed to introduce testimony from James McCellan, a Mass Electric electrician, concerning a conversation he had had with then Boston Garden electrician John Vacca about the accident. In the conversation over lunch the day after the accident, McCellan asked Vacca why there had been no Boston Edison shutdown on the night of the accident. At a voir dire outside the hearing of the jury, McCellan testified that Vacca responded, "[T]hey didn't want to go through the fuck-around with Edison." Vacca had already testified before the jury that he did not know McCellan by name, and had never had lunch with him on any occasion. At voir dire, McCellan testified that he had lunch with Vacca virtually every day while they were both working at the Garden.

McCellan's testimony could be admitted as nonhearsay if Vacca's statement met the criteria of a "vicarious admission" as found in proposed Mass.R.Evid. 801(d)(2)(D), and adopted by the court in *Ruszcyk* v. *Secretary of Pub. Safety*, 401 Mass. 418, 420 (1988). Proposed rule 801(d)(2)(D) provides:

"A statement is not hearsay if . . . the statement is offered against a party and is . . . a statement by his agent

or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship."

*Ruszcyk* prescribes a two-part inquiry for determining the admissibility of a vicarious admission. First, was the declarant (here, Vacca) authorized to act on the matters about which he spoke? *Id.* at 420, n.3. If yes, then the trial judge must further consider whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice, under Proposed Mass.R.Evid. 403. *Id.* at 422. The *Ruszcyk* court also prescribed the factors to consider in making the Rule 403 determination:

> "[T]he credibility of the witness [here, McCellan]; the proponent's need for the evidence, e.g., whether the declarant [Vacca] is available to testify; and the reliability of the evidence offered, including consideration of whether the statement was made on firsthand knowledge and of any other circumstances bearing on the credibility of the declarant."

*Id.* at 422-23.

The trial judge in the case at bar followed *Ruszcyk*'s prescription closely, and refused to admit the testimony on the grounds that the issue of an Edison shutdown was not within Vacca's scope of employment, and that, even if it were, the testimony would be more prejudicial than probative. NBG's assertion that Vacca had no responsibility for or role in arranging Boston Edison shutdowns generally, nor in the decision about whether there would be an Edison shutdown on the night of the accident is supported by the evidence at trial. The trial judge was therefore correct in barring McCellan's testimony, and need not have considered whether it would be more prejudicial than probative.

(b) *DaRu testimony.* Dennis DaRu executed the subcontract on Mass Electric's behalf. His proffered testimony was to the effect that he would not have signed the subcontract had he understood it to apply to liability arising from an injury occurring after Mass Electric, the third or fourth largest electrical contractor in the United States, completed its work. The judge was correct to exclude this parol evidence regarding

DaRu's personal understanding of the subcontract because it was irrelevant. The subcontract's indemnity provision is unambiguous and the parties' rights and obligations are to be determined from contract language itself, not from extrinsic evidence regarding its meaning or from the parties' unexpressed intent. See *Mass. Mun. Wholesale Elec. Co.* v. *Danvers,* 411 Mass. 39, 48 (1991); *Amoco Oil Co.* v. *Buckley Heating, Inc.,* 22 Mass. App. Ct. 973, 974 (1986).

(c) *Federal Office of Safety and Health Administration (OSHA) citations.* Three citations from OSHA were issued to NBG and two electrical subcontractors (not Mass Electric) after Herson's 1990 accident. The beginning "inspection date" is the day after the accident for two of the citations, and five days after the accident for the third citation, suggesting that the inspections were occasioned by the accident. The citations also gave opinions as to the cause of the 1990 accident and the causal role of those cited by OSHA. Mass Electric claims that it was error to exclude these OSHA citations when they are relevant, important, and trustworthy pieces of evidence proving the primary fact that pertinent OSHA regulations had been violated on the night of the accident. Mass Electric contends that they fall within a clear exception to the hearsay rule. We disagree.

Neither Massachusetts common law nor Proposed Mass. R.Evid. 803(8)(C), allowing a hearsay exception for public documents, permits admission of "evaluative reports" or opinions or conclusions in government reports. This is acknowledged to be contrary to Federal practice. *Rice* v. *James Hanrahan & Sons,* 20 Mass. App. Ct. 701, 706-707 n.11 (1985). Thus, even though the language of the proposed rule is identical to that in the Federal rule, Massachusetts has declined to follow the more liberal Federal interpretation embraced by the U.S. Supreme Court in *Beech Aircraft Corp.* v. *Rainey,* 488 U.S. 153, 162 (1988), which held that, "factually based conclusions or opinions are not on that account excluded from the scope of Rule 803(8)(C)."

The standard for determining whether a public document is admissible was articulated as follows in *Commonwealth* v. *Slavski,* 245 Mass. 405, 417 (1923):

"[A] record of a primary fact, made by a public officer in the performance of official duty" could be "prima

facie evidence as to the existence of that fact, but . . .
records of investigations and inquiries conducted . . . by
public officers *concerning causes and effects involving the
exercise of judgment and discretion, expressions of
opinion, and making conclusions are not admissible* in
evidence as public records" (emphasis added).

Combining the *Slavski* standard with Massachusetts com-
mon law (evidence showing that a statute was violated is
some evidence of negligence, although not negligence per se,
see *Lindsey* v. *Massios*, 372 Mass. 79, 83 [1977]), a jury is
permitted to hear evidence from which they could conclude
that a statute was violated. For example, in *Lindsey*, a suit
against the landlord by a visitor to a three-family apartment
who fell on an unlit common stairway, testimony probative of
negligence, that the light in the hallway was not lit, and that
G. L. c. 144, § 61, required a light in such hallways, was
properly admitted. *Id.* at 83-84. This is the type of "primary
fact" evidence permitted by *Slavski.* In keeping with this, it is
entirely proper to offer in evidence, as was done in the case
before us, an OSHA standard to show the relevant standard
of care. In contrast, the admission of OSHA citations rather
than OSHA standards plainly implicates the *Slavski* prohibi-
tion against expressions of opinion and conclusions.[10] The
OSHA citations were thus properly excluded.

---

[10]While no Massachusetts case has dealt specifically with the question of
the admissibility of OSHA citations, at least one other court has. In *Milli-
son* v. *E.I. du Pont de Nemours*, 226 N.J. Super. 572, 593 (1988), aff'd, 115
N.J. 252 (1989), the court pointed out that OSHA citations are merely
unsubstantiated charges, and therefore are analogous to arrest records. The
problem with admitting the citation as evidence of wrongdoing is that it is
not the product of an adjudicatory process. The citation form itself advises,

"[I]ssuance of this Citation does not constitute a finding that a viola-
tion of the [Occupational Safety and Health] Act has occurred unless
there is a failure to contest as provided for in the Act [i.e., within 15
business days of the citation] or, if contested, unless the Citation is
affirmed by the Review Commission."

Furthermore, even if the cited party fails to contest the citation, this may
represent a financial decision (that it is cheaper to pay the fine with no
contest), rather than an admission of guilt. *Millison, supra* at 596, citing
*Meadoux* v. *Hall*, 369 So. 2d 240 (La. Ct. App.), writ denied, 369 So. 2d
1366 (1979).

4. *NBG's settlement with a coindemnitor.* NBG had previously asserted claims against third-party defendant F.H. Newton Electrical Co., Inc. (Newton), for indemnification, contribution, negligence, breach of warranty, and breach of contract. As part of a global settlement between NBG's and Newton's insurers[11] prior to trial of the case at bar, NBG dismissed these third-party claims and released Newton from liability therefor. Mass Electric claims that the trial judge erred in refusing to extinguish or decrease Mass Electric's indemnity obligation to NBG because NBG's release of its claims against Newton destroyed Mass Electric's rights of subrogation and contribution as against Newton. There was no error.

There is a basic flaw in Mass Electric's argument. Whether Mass Electric can succeed in its subrogation or contribution claims against Newton notwithstanding NBG's release of its claims against Newton has not yet been adjudicated. Such claims were not brought by Mass Electric against Newton in the instant litigation, nor, to our knowledge, in any other. We do not have a copy of the relevant insurance contract nor do we even know if Newton had any causal connection, for work performed under its 1988 agreement with NBG, for the accident in 1990 that could possibly trigger an indemnity obligation. See *Collins* v. *Kiewat Constr. Co., post* 796 (1996). Unless and until such claims are properly resolved by a trial court, it is premature for us to consider the issues of whether Mass Electric has subrogation or contribution rights against Newton and, if so, whether NBG's release of its claims against Newton in any way impaired those rights. These are

---

[11]At the time of the 1990 accident, NBG was insured by National Union Fire Insurance Company (National Union) and, as a part of the subcontract with Newton, NBG was also named as an additional insured on Newton's general liability and umbrella policies with Merchants Insurance Company (Merchants). As the result of Massachusetts litigation brought by NBG against Merchants, Merchants was determined to be a primary insurer for Newton and a coprimary insurer (with National Union) for NBG for claims in Herson and Worobey. Disputes arose between the co-primary insurers as to their respective obligations, and suit was brought in New York by Merchants against National Union and NBG. Merchants, National Union, NBG and Newton agreed to a settlement which included a payment by Merchants to National Union to eliminate Merchants' exposure as insurer in Worobey and Herson, leaving National Union responsible in this regard. NBG's claims against Newton were released in connection with the termination of Merchant's obligations in Worobey and Herson.

themselves necessary prerequisites to a determination of what claims, if any, Mass Electric or Newton might have as against NBG. What is clear at this juncture, however, is that Mass Electric's present obligation to indemnify NBG is independent of and cannot be affected by the as yet unknown outcome of any such litigation.

*Judgment affirmed.*