Sosman, J.
Plaintiff Mark Petit has brought the present action seeking recovery for personal injuries allegedly sustained while working at a construction site on property owned by defendant BASF Corporation (“BASF”). Named as direct defendants are BASF, *578 its general contractor (Marshall Contractors, Inc. (“Marshall’’)), and two subcontractors (Johanson & Graves, Inc. (“J&G”) and Admiral Diywall, Inc. (“Admiral”)). Marshall filed a third-party complaint against Ostrow Electric, Inc. (“Ostrow"), the subcontractor that employed Petit, seeking indemnification from Os-trow. BASF has filed cross-claims against Marshall, J&G, Admiral, and Ostrow seeking indemnification from all of them. This matter is before the Court on BASF’s motion for summary judgment on all of its claims for indemnification, on Marshall’s motion for summary judgment against Ostrow, and on Ostrow’s cross-motion for summary judgment against Marshall. For reasons set forth below, BASF’s motion for summary judgment is DENIED, Marshall’s motion for summary judgment is DENIED, and Ostrow’s cross-motion for summary judgment is ALLOWED.
Facts
In 1990, BASF constructed a bioresearch medical facility on land it owned in Worcester, Massachusetts. Marshall entered into a construction management contract with BASF, pursuant to which Marshall functioned as the general contractor on the site. Among other duties, Marshall was to secure the services of the necessary subcontractors and was empowered to act as BASF’s agent in negotiating and executing contracts on behalf of BASF with those subcontractors: “Owner [BASF] may elect to appoint Contractor [Marshall] as the agent of Owner, but only for the limited purpose of purchasing (including negotiating contracts, inspecting and expediting), on cash or credit terms, all services which Owner identifies as being required to be purchased in connection with the construction of the Project.” However, the contract went on to specify that “Contractor [Marshall] shall have no authority, nor shall Contractor represent to others that Contractor has the authority, to act as the agent of Owner [BASF] in any respect other than specified in this Article." With respect to Marshall’s supervisory work at the site and all its other contract duties, the contract specified that Marshall was an independent contractor and not an agent of BASF: “Contractor [Marshall] shall remain an independent contractor and shall have no power, nor shall Contractor represent that Contractor has any power, to bind Owner [BASF] or to assume or to create any obligation, express or implied, on behalf of Owner.”
Marshall’s contract with BASF also provided that Marshall would indemnify BASF from and against:
any and all liability, damage, loss, cost, expense (including attorneys fees), claim, demand, suit, action, judgment, or recovery for or on account of any damage or releases to the environment, bodily injury or death of persons or damage to property, including, but not by way of limitation, damage to property of Contractor, Owner, or others, or injury, death, or damage to property of Owner’s, Contractor’s or any subcontractor’s officers, agents, employees, subcontractors or representatives, or in connection with any negligent acts or omissions of Contractor arising out of its duties hereunder, including without limitation, delegable or nondelegable duties imposed on Contractor or Owner by law, except to the extent such injury, death or damage as is caused by the negligence of Owner.
Acting as agent for BASF, Marshall proceeded to negotiate and execute various subcontracts for the project. Ostrow was engaged as the subcontractor for the electrical work on the project, J&G was engaged as the subcontractor for the plumbing and HVAC installation, and Admiral was engaged as the subcontractor for the diywall installation. The contracts with each of these subcontractors contained identical indemnification provisions as follows:
1. CONTRACTOR shall be responsible for and shall defend, indemnify and hold harmless OWNER, its officers, agents and employees, from and against:
(a) any and all liability imposed by reason of CONTRACTOR’S actual or asserted violation of laws, regulations, ordinances or other rules of any government or quasi-governmental body or agency
(b) any and all liability, damage, loss, cost, expense, (including attorneys fees), claim, demand, suit, action, judgment, or recovery . . . arising out of, or in any way occurring (1) directly or indirectly in connection with the Work or (ii) partly or wholly as a result of negligence of CONTRACTOR, any subcontractor or any officer, employee, agent or representative of either CONTRACTOR or any subcontractor: and
(c) specifically, and without limiting item (b) above, any and all liability, damage, loss, cost, expense (including attorneys fees), claim, demand, suit, action, judgment or recovery for or on account of any and all injury to, including death of, CONTRACTOR’S or any subcontractor’s, officers, agents, employees or representatives, arising out of, or in any way occurring directly or indirectly in connection with the Work, whether or not caused wholly or partly by negligence of OWNER or any agents, employees, subcontractors or representatives of OWNER.
Except as otherwise provided above in Item (c) CONTRACTOR will not be responsible for injury, including death to persons or damage to property to the extent caused by the sole negligence of OWNER.
Petit was an employee of Ostrow, the electrical subcontractor. He alleges that he was injured when he stepped on a piece of drywall that was left on the floor in tire area he was working. His complaint alleges that BASF was negligent for failing to maintain the prem *579 ises in a reasonably safe condition. As to Marshall, he alleges that Marshall breached its duty as general contractor to “control, supervise and inspect” the premises. With respect to Admiral and J&G, Petit alleges that those two subcontractors were the ones doing the work that led to the allegedly dangerous drywall debris on the jobsite floor.
Discussion
1. BASF’s Motion for Summary Judgment against Marshall
BASF has moved for summary judgment on its cross-claim against Marshall seeking indemnification from Marshall -under its construction management contract. Marshall opposes the motion on the ground that the contract only requires it to indemnify BASF if Marshall itself has been found negligent. Marshall also argues that there is no indemnification owed unless and until there is a judgment or settlement requiring BASF to pay monies on Petit’s claim.
The indemnification provisions in the BASF-Marshall contract certainly include indemnification for claims “in connection with any negligent acts or omissions of Marshall, but, read in their entirety, the indemnification provisions cover a whole host of other types of claims “arising out of the performance or nonperformance by [Marshall] of its duties hereunder.” As long as the suit or claim arises out of Marshall’s performance or nonperformance of its contractual duties (as Petit’s claim certainly does), indemnification is owed.
Marshall contends that the requirement that the claim be “in connection with any negligent acts or omissions” on its part qualifies all of the various subclauses of the lengthy indemnification clause in its contract. A careful parsing of that admittedly convoluted drafting does not support Marshall’s contention. As the court sorts out the paragraph in question, Marshall agreed to indemnify BASF from and against “any and all liability, damage, loss, cost, expense (including attorneys fees), claim, demand, suit, action judgment, or recovery” if that liability was either “for or on account of any damage or releases to the environment, bodily injury or death of persons or damage to property, ... or in connection with any negligent acts or omissions of [Marshall].” All three categories of claims (i.e., claims for damage or release to the environment, claims for personal injury or property damage, or claims “in connection with any negligent acts or omissions of [Marshall]”) are then qualified by the requirement that they must “aris[e] out of the performance or nonperformance by [Marshall] of its duties hereunder.”
In order to apply the “in connection with any negligent acts or omissions” language as a qualifier to all categories of claims for which BASF was entitled to indemnification, one would have to ignore the fact that that language is introduced by the word “or.”[1] Nor could the following qualifier (“arising out of the performance or nonperformance by [Marshall] of its duties hereunder”) be read as qualifying only a claim for “negligent acts or omissions by Marshall.” It must be read as qualifying all categories of claims for which indemnification would be owed. Surely Marshall was not agreeing to indemnify BASF for environmental damage or personal injury suits that did not have any connection to this project.
Thus, Marshall’s “negligence” does not have to be established in order to trigger indemnification, as long as the claim in question arises out of the performance or nonperformance of Marshall’s duties under the contract. Here, Petit’s claim against BASF (a claim that the worksite was not properly supervised or maintained) unquestionably arises out of Marshall’s performance or nonperformance of its construction management contract, as Marshall agreed to oversee and supervise the veiy worksite that Petit complains about.
Although Marshall’s negligence does not have to be shown in order to trigger Marshall’s obligation to indemnify BASF, BASF’s own negligence must be excluded in order to remove that obstacle to indemnification. The indemnification provision applies “except to the extent such injury, death or damage as is caused by the negligence of [BASF].”[2] Thus, BASF’s own negligence (if any) may eliminate or offset any amount that is owed under the indemnification provision. Where BASF’s own negligence is at issue in the case and remains disputed, the determination of what, if anything, is owed to BASF by Marshall must await the outcome of trial or settlement.[3] The issue of BASF’s alleged negligence can not be determined on summary judgment.
II. BASF’s Motion for Summary Judgment Against Ostrow, J&G, and Admiral
BASF has also moved for summary judgment against the subcontractors based on the indemnification clause in their respective subcontracts. Each of the defendant subcontractors argues that the indemnification provision BASF seeks to enforce is void pursuant to G.L.c. 149, §29C. The statute provides that any provision in a construction contract “which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void.” If the indemnification provision as drafted offends this statute, it is void, even if the facts of the specific case in which indemnification is sought would not offend the statute. Herson v. New Boston Garden Corp., 40 Mass.App.Ct. 779, 786 (1996); Callahan v. A.J. Welch Equipment Corp., 36 Mass.App.Ct. 608, 611 (1994); Harnois v. Quannapowitt Development, Inc., 35 Mass.App.Ct. 286, 288 (1993).
The indemnification provisions in these three subcontracts offends §29C in two respects. First, the contract requires indemnification from the subcon *580 tractor for claims “arising out of, or in any way occurring (i) directly or indirectly in connection with the Work or (ii) partly or wholly as a result of negligence of [the subcontractor].” Thus, it would give rise to indemnification in cases where the injury in question merely “occurred] . . . indirectly in connection with the Work.”[4] Injuries or damages that have occurred only “indirectly in connection with” the drywall installation, for example, could certainly include injuries or damages not “caused by” the drywall subcontractor. This provision does not specify that the injury “arise out of’ the “performance” of the work, a specification that ties the event more closely to something the subcontractor did or did not do in “performing” the work. See, e.g., M. DeMatteo Construction Co. v. A.C. Dellovade, Inc., 39 Mass.App.Ct. 1, 3 (1995) (indemnification for injuries “arising out of or in consequence of the performance of the subcontractor’s work” did not violate §29C). Nor is it saved by any limitation to the effect that the indemnification provision shall only apply “to the fullest extent permitted by law,” a limitation that can salvage broad indemnification provisions that would otherwise violate §29C. See Callahan v. A.J Welch Equipment Corp., 36 Mass.App.Ct. 608, 611 (1994); Herson v. New Boston Garden Corp., 40 Mass.App.Ct. 779, 787 (1996).
Beyond this defect, the indemnification clause goes on to require indemnification in a circumstance that would expressly violate §29C. In the case of an injury to one of the subcontractor’s own employees (which happens to be the precise scenario at issue in the case of Ostrow), the contract requires indemnification for injuries occurring in connection with the work, "whether or not caused wholly or partly by negligence of [BASF] or any agents, employees, subcontractors or representatives of [BASF].” Thus, the contract imposes an obligation to indemnify on the subcontractor even in cases where the injury was “caused wholly” by the negligence of the party being indemnified. By definition, an incident “caused wholly” by the negligence of someone other than the subcontractor is not “caused by” the subcontractor. A provision requiring a subcontractor to indemnify for losses “not caused by” the subcontractor is precisely what §29C prohibits.
Accordingly, as to the subcontractors, the indemnification provisions of their contracts are void pursuant to §29C. BASF’s motion for summary judgment against the subcontractors is therefore denied, and each of the subcontractors (defendants Admiral and J&G and third-party defendant Ostrow) is entitled to summary judgment on BASF’s claims for indemnification.
III. Marshall’s Motion for Summary Judgment Against Ostrow
Marshall’s claim for indemnification against Ostrow relies on the same defective indemnification language discussed above. Ostrow is therefore entitled to summary judgment in its favor on Marshall’s claim for indemnification.
Marshall’s third-party complaint against Ostrow also includes a claim based on the obligation to defend set forth in Ostrow’s contract. Although §29C voids the indemnification provisions of Ostrow’s contract, §29C does not apply to contractual obligations to provide a defense. See Herson v. New Boston Garden Corp., 40 Mass.App.Ct. 779, 787 (1996). Thus, under the contract, Ostrow is required to “defend . . . OWNER, its officers, agents and employees” against any suit or claim that occurs even “indirectly in connection with the Work.” The accident involving Petit, an employee of Ostrow on the site doing Ostrow’s work, would qualify as an incident that occurred at least “indirectly in connection with” Ostrow’s work.
However, Ostrow is only obligated to defend “OWNER, its officers, agents and employees” against such a claim. The “OWNER” is BASF, not Marshall. Marshall contends that it was an “agent” of BASF and that it therefore is entitled to a defense as an “agent” of “OWNER.” However, Marshall’s contract with BASF confers authority to act as Marshall’s agent for the sole purpose of negotiating and entering into contracts with the subcontractors.[5] BASF designated Marshall its agent “only for the limited purpose of purchasing (including negotiating contracts, inspecting and expediting), on cash or credit terms, all services which [BASF] identifies as being required to be purchased in connection with the construction of the Project.” In all other respects, the contract provided that Marshall was an “independent contractor.” Thus, when Marshall was supervising the worksite, its contract with BASF specified that it was not an agent of BASF with respect to such work. It was an agent only for the purpose of binding BASF to the various subcontracts that Marshall negotiated on BASF’s behalf.
The present suit does not arise out of any alleged tortious conduct by Marshall in the negotiating or execution of the subcontracts. The claim against Marshall is that it was negligent in its supervision of the worksite. In its performance of that task, the BASFMarshall contract designated Marshall as an independent contractor, not an agent. Thus, when BASF’s contract with Ostrow required Ostrow to provide a defense to BASF’s “agents,” neither BASF nor Ostrow intended that term to apply to Marshall with respect to Marshall’s performance of its supervisory work at the site. Marshall is not a third-party beneficiary of BASF’s contract with Ostrow when neither BASF nor Ostrow intended that the term “agent” apply to Marshall in that context.
Of course, the contractual designation of Marshall as an “independent contractor” does not bind plaintiff. Plaintiff Petit may seek to show that, in actual practice, BASF still exerted such control over Marshall that Marshall should be deemed an “agent” of BASF for purposes of imposing vicarious liability on BASF. How *581 ever, the contractual issue before the court is not governed by principles pertaining to vicarious liability. It is governed by contract language and by what the parties to those contracts meant by the term “agent.” The parties to those contracts did not intend the term “agent” to apply to Marshall in the performance of its work supervising the site, and thus Marshall can not be an “agent” of BASF entitled to a defense from the subcontractors who are contractually obligated to provide a defense to BASF’s “agents.” Accordingly, Ostrow is entitled to summary judgment on Marshall’s claims for both indemnification and defense.
ORDER
For the foregoing reasons, (1) BASF Corporation’s Motion for Summary Judgment is DENIED, (2) Defendant Marshall Contractors, Inc.’s Motion for Summary Judgment on Third-Party Claim against Ostrow Electric Company is DENIED; and (3) Third-Party Defendant Ostrow Electric Company’s Cross-Motion for Summary Judgment is ALLOWED.

Marshall's brief in opposition conveniently ignores this troublesome “or” by inserting the editorial notation "[sic]” after it, as if the use of the word “or” were some form of drafting error or clerical mistake. Although the drafting is certainly awkward, there is a rational interpretation that gives meaning to that particular “or,” and Marshall may not dispense with that interpretation by simple resort to editorial notations. There is no evidence to suggest that the word “or” was inserted by mistake or inadvertence.

Mie drafting is again maddeningly awkward. This clause should presumably read, “except to the extent such injury, death or damage is caused by the negligence of [BASF].’’ The unnecessary and grammatically incorrect insertion of the word “as” is a drafting error that does not appear to change the meaning of this final piece of the clause.

Marshall’s second argument, that there is no indemnification owed unless and until BASF is required to pay out on a settlement or judgment, is also meritorious. So far, BASF has not incurred any “loss” or “judgment” stemming from Petit’s claim, and therefore there is nothing at present for Marshall to reimburse. However, the indemnification provision also covers any “expense (including attorneys fees)” incurred in connection with such a claim. BASF has presumably already incurred such a covered “expense.” Other than the potential that BASF’s own negligence would reduce or offset this requirement that Marshall pay BASF’s attorneys fees and costs, it is an item for which indemnification is already owed.

In each subcontract, the “Work” is defined by a general description of the goods and services that subcontractor is to provide. For Ostrow, the “Work” is identified as “Furnishing and installation complete of the Electrical Work for BASF Biomedical Research Center in Worcester, Massachusetts.” For J&G, the “Work” was “Furnishing and installation complete of the Plumbing and HVAC Piping Work for BASF Biomedical Research Center in Worcester, Massachusetts.” For Admiral, the “Work” was “Furnishing and installation complete of the Drywall/Metal Stud Work for BASF Biomedical Research Center in Worcester, Massachusetts.”

Marshall was signing the subcontracts on behalf of BASF. In order to bind BASF to those contracts, Marshall obviously needed to be an agent of BASF.