Sanders, Janet L., J.
This case arises out of the construction of a FedEx facility in Northborough, Massachusetts. Plaintiffs Hillside PXF, LLC (Hillside) and Jones Development Company, LLC (Jones) filed this action against defendants G. Lopes Construction, Inc. (Lopes), Premier Design + Build Group, LLC (Premier), and Haley & Aldrich, Inc. (Haley) seeking to recover damages relating to remedial work performed after the construction. This Court has already denied motions for summary judgment made by Haley and by Premier as to plaintiffs’ claims asserted against them. Now before this Court is Premier’s Motion for Summaiy Judgment as to Count VII of its Cross Claim against defendant Lopes. Premier seeks a declaration from this Court that its subcontract with Lopes contains a valid and enforceable duty to indemnify and that Lopes is obligated to indemnify, defend, and hold Premier harmless from any errors or deficiencies related to the construction project. After careful review of the parties’ submissions, this Court concludes that Premier’s motion must be DENIED as to Lopes’ duty to indemnify but ALLOWED as to its duty to defend.
BACKGROUND
The relevant facts in the summaiy judgment record, viewed in the light most favorable to the plaintiffs, are as follows. Hillside and Jones engage in commercial development and construction projects. On August *47 23, 2011, Hillside as the owner/developer and Premier as the general contractor entered into an agreement to construct a FedEx freight facility at 300 Bartlett Street, Northborough, Massachusetts (the Project). Because the site was on a relatively steep slope, a significant amount of cut and fill and excavation work was required to prepare it for construction. The plaintiffs retained Premier to perform this work. Premier in turn retained Lopes as a subcontractor to perform demolition, grading, and excavation for the Project. The defendant Haley was retained by Premier to provide on-site monitoring of the earthwork.
On September 21, 2011, Lopes began removing trees at the Project site, and excavation at the site continued through the fall. Hillside authorized Premier to proceed with the foundation installation in late December 2011, and footings and foundations for the Project were installed shortly thereafter. In February 2012, it was noticed that the walls appeared to have shifted laterally. Ultimately, it was determined that the foundations had settled and that this was caused by improper fill work. There are disputes of fact as to which entity — Premier, Lopes, or Haley — either alone or in combination with each other, was responsible for the foundation’s failure. By the time the building was stabilized and the site repaired, Hillside had spent more than $3 million in remedial work.
Premier’s motion relies on certain provisions in two separate subcontracts it had with Lopes, one dated August 24, 2011 and the other dated March 1, 2012 (the Subcontracts). The Subcontracts have two clauses in each of them which can be fairly characterized as indemnification provisions. The first (Indemnification Provision #1) is as follows:
The Subcontractor [Lopes] shall indemnify and save harmless the Owner [Hillside] and the Contractor [Premier] and their officers, agents, servants and employees, from and against any and all claims, demands, suits, proceedings, liabilities, judgments, awards, losses, damages, costs and expenses, including attorneys fees, on account of . . . damage to or destruction of any property, directly or indirectly arising out of, relating to or in connection with the Work, whether or not due or claimed to be due in whole or in part to the active, passive or concurrent negligence or fault of the Subcontractor . . . and whether or not such claims, demands, suits or proceedings are just, unjust, groundless, false or fraudulent; and the Subcontractor shall and does hereby assume and agrees to pay for the defense of all such claims, demands, suits and proceedings . . . the Subcontractor shall not be required to indemnify the Contractor, his officers, agents, servants or employees against any such damages occasioned solely by acts or omissions of the contractor other than supervisory acts or omissions of the Contractor in the work.
(Emphasis added.) The second (Indemnification Provision #2) is part of the General Conditions of the Subcontracts and provides in relevant part that;
Subcontractor shall indemnify and hold harmless PDBG . . . Owner . . . and agents and employees of any of them (“. . . Indemnified Parties”) from and against claims, damages, losses and expenses, including, but not limited to, attorneys fees arising out of or resulting from (i) performance or non-performance of the Work, (ii) breach of obligations of Subcontractor under the Contract Documents including, without limitation, defective Work ... or (v) any other act or omission with respect to the Work by Subcontractor . . . resulting in . . . injury to or destruction of property, or loss thereof.
(Emphasis added.) This same provision goes on to more specifically describe the duty to defend:
Subcontractor hereby acknowledges and agrees that if any one or more claims or actions are asserted against PDBG Parties giving rise to a duty . . . [to] defend on the part of Subcontractor pursuant to this Section, PDBG Parties shall have the right to elect, in PDBG Parties’ sole and absolute discretion, whether to contest any one or more of such claims or actions and Subcontractor shall be required to perform the obligations of Subcontractor set forth above regardless of whether PDBG Parties elect to contest such claim(s). If PDBG Parties elect to contest any such claim(s), PDBG Parties shall have the right to select PDBG Parties’ own counsel and control their defense and Subcontractor shall bear the cost of employing such counsel.. .
Both Indemnification Provision #1 and Indemnification Provision #2 refer to “Work.” The General Conditions define “Work to include ’’all design, labor, materials, skill, equipment, taxes, services, delivery charges, supervision, administration, facilities, and field measurement necessary to produce the construction required by the Subcontract Agreement and other Contract Documents." The term “Contract Documents” is also defined by the Subcontracts and includes the Construction Agreement between plaintiffs and Premier. Finally, the Subcontracts state that they shall be construed in accordance with Massachusetts law and their provisions shall be interpreted where possible in a manner to sustain their legality and enforceability.”
Hillside and Jones filed this action October 28, 2013. By letter dated December 27, 2013, Premier tendered its defense and indemnification of this matter to Lopes. Counsel for Lopes requested additional information, and on February 4, 2014, Premier issued a more detailed amended tender of defense and indemnity to Lopes. Thereafter, Lopes declined to defend and indemnify Premier under the subcontracts, and Premier eventually filed a cross claim against Lopes.
*48 DISCUSSION
This Motion raises the question of whether the two indemnifications clauses contained in the Subcontracts comply with G.L.c. 149, §29C (Section 29C). The issue is not an easy one: as one party’s counsel remarked at the motion hearing, the clauses do not appear to have been drafted with an eye toward Section 29C. Nevertheless, the Subcontracts expressly state that their provisions must be construed wherever possible in a manner that “sustains their legality and enforceability.” This Court approaches the task of resolving the question before me with that in mind.
Section 29C states:
Any provision for or in connection with a contract for construction, reconstruction, installation, alteration, remodeling, repair, demolition or maintenance work, including without limitation, excavation, backfilling or grading, on any building or structure, whether underground or above ground, or on any real property, . . . which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void.
In determining the validity of Indemnification Provisions #1 and #2, this Court focuses on the language of the clauses themselves rather than on the facts relating to the incident and an assessment of fault of the parties. See, Herson v. New Boston Garden Corp., 40 Mass.App.Ct. 779, 786-87 (1996). That is because the purpose of such clauses is to make clear to the parties from the outset where the burden of acquiring insurance lies. Harnois v. Quannapowitt Dev., Inc., 35 Mass.App.Ct. 286, 288 (1993). “Indemnity provisions are not read with any bias in favor of the indemnitor and against the indemnitee; rather, such provisions are to be fairly and reasonably construed to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished.” Urban Inv. & Dev. Co. v. Turner Constr. Co., 35 Mass.App.Ct. 100, 107 (1993).
As applied by Massachusetts courts, Section 29C voids only those contractual indemnity provisions that require indemnification for injuries not caused in any part by the subcontractor. Herson v. New Boston Garden Corporation, 40 Mass.App.Ct. at 788. As explained by the Appeals Court: “General contractors and owners are prohibited by §29C from receiving indemnify for their sole causal negligence, but §29C does not proscribe full indemnification when the conduct of the subcontractor is only a partial cause of the injury.” Id. Thus, a contractual indemnify arrangement whereby the subcontractor agrees to indemnify the contractor for the entire liability when both the subcontractor and the general contractor or owner are causally negligent, is not prohibited by Section 29C. What is forbidden is shifting that liability to a subcontractor even where it plays no role in causing the damages. The question before this Court is whether the indemnification provisions here permit that shifting. This Court concludes that they do.
Indemnification Provision #1 states that Lopes is required to indemnify Premier for “damage to or destruction of any property, directly or indirectly arising out of, relating to or in connection with the Work, whether or not due or claimed to be due in whole or in part to the active, passive or concurrent negligence or fault of the Subcontractor . . .” By its terms, this provision would require Lopes to indemnify Premier for negligently performed work even where that negligent work was not done by Lopes. In this Court’s view, this violates Section 29C. The final sentence of Indemnification Provision #1 does not cure the problem. It states that Lopes shall not be required to indemnify Premier “against any damages occasioned solely by acts or omissions of the Contractor [Premier] other than supervisory acts or omissions of the contractor in the work.” (Emphasis added.) In other words, Lopes is required to indemnify Premier for its supervisory acts even though Lopes did nothing to cause the injury for which damages are claimed. Again, this is a violation of the statute.
Indemnification Provision #2 also goes beyond that which is permitted by Section 29C. It requires Lopes to indemnify Premier for claims for damage “arising out of or resulting from (i) performance or non-performance of the Work . . .” “Work” is defined by the Subcontracts: it includes all design, labor, materials, and equipment necessary to “produce the construction required by the Subcontract Agreement and other Contract Documents.” (Emphasis added.) “Contract Documents” under the Subcontracts means the “Construction Contract,” which is in turn defined as the “agreement entered into by and between Owner and PDPG [Premier] referred to in the Subcontract Agreement relating to the'Project.” Because this definition of “Work” necessarily encompasses work performed by others on the Project, it operates as no limitation at all on Lopes’ indemnification obligation: Lopes must indemnify Premier not only for Premier’s own actions, but for the actions of every other subcontractor Premier hired, even where Lopes played no role in the performance of that work.
Premier responds that the term “Work” must be construed in line with the overall obligation that the Subcontracts impose on Lopes. Part A of both Subcontracts defines “Work” to mean those obligations both in the Subcontract and in the Contract Documents that Lopes “agrees to perform.” Premier argues that, to the extent that the Contract Documents dictate what others are to do on the Project, then Lopes has not “agreed to perform” those other tasks and that this, as a consequence, narrows the definition of “Work” as used in the Indemnification Provisions. This is a stretch, at best, requiring the Court to put together and merge definitions from other parts of the Subcon *49 tracts in order to impose limitations that are not apparent from the plain language of the Indemnification Provisions themselves.
Even if this Court were to accept Premier’s narrower definition of “Work,” it is still not enough to save these indemnification provisions, given the second flaw in Premier’s argument. Premier argues that the requisite causal connection between Lopes’ acts and the claims for which indemnification is sought is provided by the phrase “arising out of.” Indemnification Provision #1 applies, however, not only to claims for injury “arising out of’ the Work but also to claims “relating to or in connection with the Work.” Thus, even with the contorted definition of “Work” that Premier urges this Court to accept, it clearly extends well beyond any “work” actually performed by Lopes. Indemnification Provision #2 is a bit more narrowly drawn, stating that the claim must arise out of or result from the “performance or nonperformance of the Work,” among other things. But it does not specify who has to have performed (or failed to perform) that “Work” in order to trigger the indemnification obligation, and it thus must be read as extending to acts or omissions by others. In other words, Lopes could be required to indemnify Premier even where its acts or omissions did not play any part in causing the damage.
Although this Court agrees with Lopes that the two provisions impose indemnify obligations beyond that which is permitted by Section 29C, it does not follow that Lopes has no duty to defend. As the SJC explained in Herson v. New Boston Garden Corp., 40 Mass.App.Ct. at 786-87, the duty to defend is “independent of and broader than the duly to indemnify” and the imposition of such a duly is not constrained by Section 29C, which makes no reference to it. As quoted above, the Subcontracts contain language requiring Lopes to defend Premier from claims or actions asserted against Premier, and to bear the cost of employing counsel if Premier chooses to contest the claims asserted against it. Lopes does not even attempt to explain in its written opposition why this language does not impose upon it a duiy to defend Premier in this litigation. In any event, this Court concludes that it does.