63 Mass. App. Ct. 529 (2005)                         529

North American Site Developers, Inc. *v.* MRP Site Development, Inc.

NORTH AMERICAN SITE DEVELOPERS, INC., & another[1] *vs.*
MRP SITE DEVELOPMENT, INC., & another.[2]

No. 03-P-829.

Norfolk. May 14, 2004. - May 16, 2005.

Present: PERRETTA, BERRY, & TRAINOR, JJ.

*Indemnity. Contract,* Indemnity, Construction of contract.

In an appeal from a declaratory judgment requiring a sub-subcontractor
(defendant) to defend and indemnify fully its subcontractor (plaintiff) for
expenses arising from a negligence action brought by the defendant's
injured employee, this court concluded that the defendant's indemnity was
limited by the plain language in the parties' contract, which was a reason-
ably clear expression of the parties' intent to limit the defendant's
indemnity obligation to losses caused by the defendant's own conduct, and
this court remanded the matter for a determination of the defendant's
proportionate liability [532-535]; further, this court declined to consider an
issue raised by the plaintiff on appeal (specifically, the correctness of the
judgment declaring that the defendant's insurer had no duty to defend or
indemnify the contractor), where the plaintiff failed to demonstrate how its
interests were harmed by that declaration [535-537].

CIVIL ACTION commenced in the Superior Court Department on
November 13, 2000.

The case was heard by *Elizabeth B. Donovan,* J., on motions
for summary judgment.

*Gareth W. Notis* for MRP Site Development, Inc.

*Richard B. Kirby* for North American Site Developers, Inc.

PERRETTA, J. On its appeal from a judgment requiring it to
defend and to indemnify fully North American Site Developers,
Inc. (NASDI), MRP Site Development, Inc. (MRP), argues that
its indemnity obligation is limited by its contract with NASDI
to the portion of liability attributable to its own conduct. NASDI

[1]Morse Diesel International, Inc.
[2]Travelers Indemnity Company of Illinois.

530            63 Mass. App. Ct. 529 (2005)

North American Site Developers, Inc. *v.* MRP Site Development, Inc.

appeals from that part of the judgment that declares that Morse Diesel International, Inc. (Morse), is not entitled to a defense or indemnification from Travelers Indemnity Company of Illinois (Travelers), or from MRP. Neither Morse nor Travelers appeals from the judgment. We conclude that MRP's indemnity obligation to NASDI is proportional and that NASDI has failed to identify how it is harmed by the declaration that neither MRP nor Travelers has a duty to indemnify or defend Morse.

1. *Background facts and procedural history.* In February, 1998, Morse entered into a contract with the New Boston Corporation (NBGC) to provide construction management for NBGC on the Boston Garden Demolition and Fleet Center South Facade Renovation project. On March 11, 1998, having sought bids for demolition work on the project, Morse executed a letter of intent with NASDI, evidencing Morse's intention to issue a $1.325 million subcontract to NASDI. The letter authorized NASDI to proceed immediately with certain preparatory work "unless otherwise directed." Morse and NASDI executed the contract contemplated in the letter of intent on May 20, 1998.

On April 6, 1998, NASDI hired MRP to perform demolition on the project pursuant to a subcontract (MRP subcontract). MRP's work for NASDI under the MRP subcontract began on April 10, 1998. Scott Duclos, an MRP employee, was injured while working at the site on April 11, 1998. The MRP subcontract required MRP to maintain comprehensive general liability insurance and to endorse the policy in the names of NASDI, its subsidiaries, NBGC, and others. MRP was also required by the MRP subcontract to list Morse among the additional insureds on its policy. MRP's comprehensive general liability insurance policy was held by Travelers.

On April 14, 1999, Duclos brought an action in negligence (*Duclos* action) against the general contractor on the project, Morse, and Morse's subcontractor, NASDI. Morse crossclaimed against NASDI for indemnity, and NASDI brought a third-party claim against MRP. Duclos ultimately settled his negligence action against Morse and NASDI, and the parties eventually stipulated to the dismissal of Duclos's complaint against all named defendants as well as the third-party claim against MRP, and later, Morse's cross claim against NASDI.

While the *Duclos* action was pending, however, Morse and NASDI brought the present action against MRP and Travelers, seeking a declaration that they (Morse and NASDI) were entitled to a defense and indemnification under the indemnity and defense clause of the MRP subcontract as well as the general liability insurance policy issued by Travelers to MRP.[3] Ruling on cross motions for summary judgment, a judge concluded that MRP and Travelers were obligated to defend and to indemnify fully NASDI but not Morse in the *Duclos* action. Because Morse chose to dismiss its appeal from the judgment, see Mass.R.A.P. 29(b), 365 Mass. 877 (1974), and Travelers failed to file a brief in the appeal, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), we consider only the arguments raised by MRP and NASDI on their cross appeals from the judgment.

We are left with MRP's argument that its contractual indemnity obligation is limited to the share of liability attributed to its conduct and NASDI's contention that Travelers owes a duty both to defend and to indemnify Morse. These claims are based on several clauses set out in the MRP subcontract.

2. *The MRP subcontract.* Article 11.10 of the MRP subcontract, the indemnity clause, reads in relevant part:

> "To the fullest extent permitted by law, [MRP] shall indemnify, hold harmless, and defend (with counsel reasonably acceptable to [NASDI]) [NASDI] . . . , Owner, [and] Architect . . . from and against claims, damages, losses and expenses . . . arising out of or resulting from performance or non-performance of [MRP's] Work under this Subcontract, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death . . . *but only to the extent caused in whole or in part by the negligent or willful acts or omissions of [MRP]* . . . regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder"[4] (emphasis supplied).

---

[3]The parties agreed to the dismissal of the claims for breach of contract and violations of G. L. c. 93A.

[4]This plain language establishes both a duty to defend and a duty to indemnify NASDI. These duties are separate and independent. See *Herson* v. *New Boston Garden Corp.*, 40 Mass. App. Ct. 779, 786-787 (1996). Because

Through article 10, Exhibit B to the MRP subcontract required MRP to maintain a comprehensive general liability insurance policy endorsed to name NASDI as an additional insured.[5] It also required that insurance certificates name NASDI and Morse, among others, as additional insureds.

MRP's policy with Travelers, as effective on the date of Duclos's injuries, also contained a "BLANKET ADDITIONAL INSURED" endorsement (endorsement) amending the policy to include as an insured "any person or organization [the named insured is] required by written contract to include as an insured, but only with respect to liability arising out of [the named insured's work]." Coverage under the endorsement applied only if the written contract was "executed prior to the occurrence of any loss."

3. *MRP's appeal.* To put MRP's argument in focus, we repeat that provision in article 11.10 of the MRP subcontract previously set out and emphasized, that is, that MRP agreed to "indemnify . . . [NASDI] . . . from and against claims, damages, losses, and expenses . . . *but only to the extent caused in whole or in part by the negligent or willful acts or omissions of [MRP]*." Based on this language and the established principle that "[c]ontracts of indemnity are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished," *New York,*

---

MRP's arguments are based solely on its duty to indemnify, we do not consider the scope of article 11.10 with respect to its duty to defend NASDI. See Mass. R.A.P. 16(a)(4). See also *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Engrs., Inc.*, 396 Mass. 818, 821 n.4 (1986).

[5]Article 10 of the MRP subcontract, entitled "INSURANCE," provides: "[MRP] shall maintain at its own cost the insurance coverage described in Exhibit 'B' or contract with Owner/Contractor attached hereto whichever is greater in coverage, and shall comply with all other terms set forth in *Exhibit 'B' or contract with Owner/Contractor attached hereto whichever is greater in coverage*" (emphasis in original).

Because as far as we can determine the "Owner/Contractor" agreement was not attached to the MRP subcontract and because neither MRP nor NASDI argue to the contrary, we assume that the insurance requirements set out in Exhibit B apply. Those requirements are: "[MRP] shall maintain during the progress of the Work . . . insurance with the minimum limits and coverage as shown below . . . (B) COMPREHENSIVE GENERAL LIABILITY insurance [which] policy must be endorsed to name [NASDI] and its subsidiaries as additional insureds, and include the Owner, Architect, and others if required in the Contract Documents."

*N.H. & H.R.R.* v. *Walworth Co.*, 340 Mass. 1, 3 (1959), quoting from *Century Indem. Co.* v. *Bloom*, 325 Mass. 52, 56 (1949); see *Shea* v. *Bay State Gas Co.*, 383 Mass. 218, 222 (1981), MRP argues that its indemnity obligation is proportionately limited to its causal fault. Put another way, MRP contends that the prefatory phrase "but only to the extent" is a clear expression of intent to restrict its indemnity obligations to "only" those losses caused by the negligent or wilful conduct of MRP. NASDI contends first, that principles of negligence should not be brought to bear on questions of indemnity, because negligence on the part of an indemnitor is not generally required in order to trigger an obligation to indemnify; and second, that the public policy underlying the enforcement of construction contract indemnification provisions, namely, clarifying where the burden of acquiring insurance lies, would be undermined by MRP's interpretation of the clause, which would require a judicial determination of negligence and comparative negligence.

While not raised by the parties, it appears that the instant indemnity clause is based upon the standard indemnity language contained in the 1987 edition of AIA Document A401, Standard Form of Agreement Between Contractor and Subcontractor, and the cognate provision of AIA Document A201, General Conditions of the Contract for Construction. The parties have not cited and we have not found any reported Massachusetts appellate decision construing similar language.[6] However, other jurisdictions construing this language have concluded that it creates a proportionate indemnity obligation. See, e.g., *East Harding, Inc.* v. *Horace A. Piazza & Assocs.*, 80 Ark. App. 143, 149-150 (2002); *Hagerman Constr. Corp.* v. *Long Elec. Co.*, 741 N.E.2d 390, 393-394 (Ind. App. 2000); *MSI Constr. Managers, Inc.* v. *Corvo Iron Works, Inc.*, 208 Mich. App. 340, 343-344 (1995); *Braegelmann* v. *Horizon Dev. Co.*, 371 N.W.2d 644, 646 (Minn. App. 1985); *Dillard* v. *Shaughnessy, Fickel &*

---

[6]Although the indemnity provision set out in *Miley* v. *Johnson & Johnson Orthopaedics, Inc.*, 41 Mass. App. Ct. 30, 33 n.7 (1996), was similar in material aspects to the indemnity provision before us, there is nothing in the holding in that case to suggest that proportionate indemnification was at issue. Rather, the question was whether the subcontractor's mere presence at the work site was sufficient to trigger a contractual indemnity obligation.

534        63 Mass. App. Ct. 529 (2005)

North American Site Developers, Inc. *v.* MRP Site Development, Inc.

*Scott Architects, Inc.*, 884 S.W.2d 722, 724-725 (Mo. App. 1994) (applying Kansas law); *Nusbaum* v. *Kansas City*, 100 S.W.3d 101, 106-107 (Mo. 2003); *Mautz* v. *J.P. Patti Co.*, 298 N.J. Super. 13, 21 (App. Div. 1997); *Greer* v. *Philadelphia*, 568 Pa. 244, 250-251 (2002); *Brown* v. *Boyer-Washington Blvd. Assocs.*, 856 P.2d 352, 355 (Utah 1993).

Although many of the cited cases seem to apply the rule that indemnity agreements are to be strictly construed against the indemnitee, a rule not followed in Massachusetts, see *Herson* v. *New Boston Garden Corp.*, 40 Mass. App. Ct. 779, 782 (1996) ("[i]ndemnifcation provisions are to be read without any bias for the indemnitor or against the indemnitee"), we do not read those holdings as having turned on a narrow reading of an ambiguous indemnity provision. But see *Braegelmann, supra.* Rather, the phrase "to the extent caused in whole or part" is generally treated as a reasonably clear expression of the parties' intent to limit a contractual indemnity obligation to losses caused by the indemnitor's conduct. This latter aspect of reasoning in the holdings from other jurisdictions is consistent with the law of Massachusetts. See *Herson* v. *New Boston Garden Corp.*, 40 Mass. App. Ct. at 782 (indemnification provisions "are to be interpreted like any other contract, with attention to language, background, and purpose"). Consequently, we conclude MRP's indemnity obligation is limited under the MRP subcontract to losses caused by its own conduct.

To read the disputed language in the manner urged by NASDI would not only render the phrase meaningless, it would also be contrary to the basic principle that in construing disputed language set out in a contract, we should give words their plain and ordinary meaning. See *Kelly* v. *Dimeo, Inc.*, 31 Mass. App. Ct. 626, 629 (1991). The word "extent" is commonly understood to speak to range, scope, and degree. See Webster's Third New Intl. Dictionary 805 (1993), where the word "extent" is defined as "the range (as of inclusiveness or application) over which something extends."

NASDI also argues that our courts have "steadfastly rejected subcontractors' attempts to obtain proportionate indemnification." There is nothing in G. L. c. 149, § 29C, that directly or indirectly prohibits proportionate indemnification

63 Mass. App. Ct. 529 (2005)                                    535

North American Site Developers, Inc. *v.* MRP Site Development, Inc.

provisions in subcontracts. Rather, the only prohibition set out in § 29C is against indemnification agreements that obligate a subcontractor to provide indemnification for losses that it in no way caused.[7] See *Miley* v. *Johnson & Johnson Orthopaedics, Inc.*, 41 Mass. App. Ct. 30, 32 (1996); *Sciaba Constr. Corp.* v. *Frank Bean, Inc.*, 43 Mass. App. Ct. 66, 69-70 (1997); *Joseph Francese, Inc.* v. *DOS Concrete Servs., Inc.*, 47 Mass. App. Ct. 367, 369 n.3 (1999). See also Masacchio, Statutory Limitations on Indemnity Agreements in Construction Contracts: The Meaning and Effect of G. L. M. c. 149, § 29C, 80 Mass. L. Rev. 54, 55 (1995).

4. *NASDI's appeal.* The judgment provides that MRP and Travelers "owe neither a duty to defend nor a duty to indemnify Morse." Morse stipulated to the dismissal of its appeal pursuant to Mass.R.A.P. 29(b). NASDI now claims that Morse, the general contractor, is entitled to a defense by and indemnification from Travelers. NASDI has not shown how its interests have been harmed by that declaration. See *Warren* v. *Boston & Maine R.R.*, 163 Mass. 484, 485-486 (1895); *Whalen* v. *Shivek*, 326 Mass. 142, 149 (1950); *Monize* v. *Frisoli*, 6 Mass. App. Ct. 50, 51 (1978).

NASDI takes the position that Exhibit B to the MRP subcontract, see note 5, *supra*, required MRP to procure liability insurance for Morse. Based on that premise, NASDI argues that it has a contractual right to have Travelers indemnify Morse and that the judgment prevents it from realizing the benefit of its bargain. The obvious problem with NASDI's argument is that any obligation owed by Travelers to defend and to indemnify Morse turns on the insurance contract between MRP and Travelers and not the subcontract between NASDI and MRP. To the extent MRP breached any contractual obligation to procure

---

[7]General Laws c. 149, § 29C, as appearing in St. 1986, c. 557, § 135, provides in relevant part:

"Any provision for or in connection with a contract for construction . . . [or] demolition. . . which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void."

536          63 Mass. App. Ct. 529 (2005)

North American Site Developers, Inc. *v.* MRP Site Development, Inc.

insurance for Morse, NASDI's rights under the subcontract are against MRP and not Travelers.[8]

Moreover, it is difficult to understand NASDI's contention that absent insurance coverage for Morse under MRP's policy with Travelers, it (NASDI) may yet be called upon to indemnify Morse in connection with the *Duclos* action. As previously detailed in part 1 of this opinion, Duclos settled his negligence action against Morse and NASDI, the parties stipulated to a dismissal of Duclos's complaint against all named defendants as well as NASDI's third-party claim against MRP, and Morse and

---

[8]NASDI has not argued that it is a third-party beneficiary of the contract between MRP and Travelers. Even had it made such an argument, our conclusion would be no different. There is nothing in the materials before us that would support a conclusion that NASDI was an intended beneficiary of any promise on Travelers's part to insure Morse's interest. Any benefit flowing to NASDI by reason of Travelers's contractual obligation to MRP to include Morse as a named insured is incidental rather than clear and definite. See *Miller* v. *Mooney*, 431 Mass. 57, 61-62 (2000); *Macksey* v. *Egan*, 36 Mass. App. Ct. 463, 468-470 (1994); Restatement (Second) of Contracts § 302 (1981). Contrast *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 195 (1982); *Flattery* v. *Gregory*, 397 Mass. 143, 148-149 (1986).

We attach little or no significance to the fact that NASDI bargained for and obtained MRP's promise to obtain insurance on Morse's behalf. General contractors commonly require subcontractors of all tiers to name them as additional insureds as a means of reallocating liability risks arising out of subcontractors' work. See *Transamerica Ins. Group* v. *Turner Constr. Co.*, 33 Mass. App. Ct. 446, 450 (1992). See generally 9 Couch, Insurance § 126:7 (3d ed. 1997); Malecki, The Additional Insured Book 171 (4th ed. 2000); Turner, Insurance Coverage of Construction Disputes § 1:2, at 1-4 (2d ed. 2004). Indeed, Schedule E to the Morse/NASDI subcontract, which is in all material respects identical to the terms and conditions contained in Schedule E of the bid package issued by Morse, required NASDI to name Morse as an additional insured on all required insurance policies and further required that, "[s]hould [NASDI] engage a Sub-Subcontractor, the same conditions will apply under this Agreement to each Sub-Subcontractor."

Viewed in this light, NASDI's requirement that MRP, a sub-subcontractor, name Morse, the general contractor, as an additional insured on all its (MRP's) policies reflects a coordinated purpose, however imperfect in execution, to underwrite Morse's losses. That NASDI could thereafter benefit by virtue of not being called upon to do so is merely incidental to the purpose of the promise, to protect Morse. See *Plymouth Hous. Authy.* v. *Plymouth*, 401 Mass. 503, 505 (1988); *Macksey* v. *Egan*, 36 Mass. App. Ct. at 468-470. Contrast *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. 535, 546-548 (1979) (third-party creditor was beneficiary of contract using words of indemnification and providing that payments under indemnification provision would be made directly to third party).

NASDI stipulated to a dismissal of Morse's cross claim against NASDI.[9] Whether NASDI is contractually obligated to Morse and, if so, to what extent, are questions that do not appear to have been raised in the present action. In any event, the terms of any settlement agreement between Morse and NADSI have not been made a part of the record before us.

5. *Conclusion.* Paragraphs 1a, 2, and 3 of the judgment are affirmed. Paragraph 1b is reversed, and the matter is remanded to the Superior Court for a determination of MRP's proportionate liability for injuries caused by its negligent or wilful acts or omissions.

*So ordered.*

---

[9]The judge in the *Duclos* action, on Morse's motion for partial summary judgment on its cross claim against NASDI, ruled that NASDI was contractually obligated to defend and to indemnify Morse. However, Morse and NASDI stipulated to the dismissal of the cross claim prior to the entry of a judgment on that ruling.