70 Mass. App. Ct. 373 (2007)                                    373

Rush *v.* Norfolk Electric Company, Inc.; Harding & Smith, Inc; New England Insulation Company.

MICHAEL RUSH & another[1] *vs.* NORFOLK ELECTRIC COMPANY, INC., & another[2]; HARDING & SMITH, INC., third-party defendant; NEW ENGLAND INSULATION COMPANY, fourth-party defendant.

No. 06-P-1105.

Suffolk. March 8, 2007. - October 4, 2007.

Present: COWIN, ARMSTRONG, & VUONO, JJ.

*Contract*, Indemnity, Construction contract, Subcontract, Construction of contract. *Indemnity*.

In a personal injury case in which the plaintiffs, a husband and wife, success-fully sought recovery for the husband's negligence claim and the wife's claim of loss of consortium, the trial court judge, acting on a posttrial claim for indemnification brought by one codefendant (a general contractor) against a third-party defendant (a subcontractor), properly concluded that the broad indemnity clause in the general contract and the limited indemnity clause in the subcontract were in conflict, and properly ruled that the latter clause controlled [375-381]; further, the judge properly construed the language in that clause to limit the indemnity obligations to losses caused by the third-party defendant's conduct, which was, with respect to the husband's negligence claim, nothing [381-383].

This court was not obligated to pass on an issue that was not presented in any meaningful way at the trial court level. [383-384]

CIVIL ACTION commenced in the Superior Court Department on March 26, 2001.

The case was tried before *Carol S. Ball*, J., and posttrial motions for summary judgment on third- and fourth-party complaints for indemnification were heard by *Thomas P. Billings*, J.

*James K. Kaufmann* for Modern Continental Construction Co., Inc.

*Michael P. Giunta* (*John W. Moran* with him) for Harding & Smith, Inc.

*Richard W. Jensen* for New England Insulation Company.

---

[1] Colleen Rush.

[2] Modern Continental Construction Co., Inc.

Rush v. Norfolk Electric Company, Inc.; Harding & Smith, Inc; New England Insulation Company.

COWIN, J. We address a claim for indemnification following a judgment for damages arising from significant physical injuries sustained by the plaintiff, Michael Rush, when he was working at the Deer Island secondary waste treatment project of the Massachusetts Water Resources Authority (the authority). Plaintiff Colleen Rush also obtained a judgment for loss of consortium. Acting on a posttrial motion for summary judgment, a judge of the Superior Court, in a comprehensive and well-reasoned opinion, allowed the claim of the codefendant, Modern Continental Construction Co., Inc. (Modern Continental), for indemnification by the third-party defendant, Harding & Smith, Inc. (Harding & Smith), but only with respect to Colleen Rush's judgment for loss of consortium and Modern Continental's expenses of defending both the Michael Rush and the Colleen Rush claims. Asserting that it is entitled to indemnification with respect to the Michael Rush judgment also,[3] Modern Continental filed a timely notice of appeal. We affirm.

1. *Background.* The underlying facts are not disputed. The authority contracted with Modern Continental to perform as general contractor on the project, with those parties entering into a contract containing general conditions set forth in 109 single-spaced printed pages. Modern Continental subcontracted electrical work to the codefendant, Norfolk Electric Company, Inc. (Norfolk Electric), and plumbing work to the third-party defendant, Harding & Smith. Harding & Smith in turn entered into a sub-subcontract with the fourth-party defendant, New England Insulation Co. (NEI), under which NEI would provide insulation and piping systems for the project. Plaintiff Michael Rush was employed by NEI at the time of his injuries.

Rush commenced an action alleging that his injuries were attributable to the negligence of both Modern Continental and Norfolk Electric. Liberty Mutual Insurance Company (Liberty Mutual), Norfolk Electric's general liability insurer, assumed the defense of both defendants after Modern Continental, pursuant to an indemnification agreement, tendered the defense to Norfolk Electric. A Superior Court jury found that each defend-

---

[3]That judgment, before interest, entered in the amount of $865,083.75, and constituted by far the largest amount at issue. Colleen Rush's judgment for loss of consortium, before interest, was $25,000. Defense costs were estimated to be approximately $100,000.

ant was thirty-seven and one-half percent negligent, while Rush was twenty-five percent contributorily negligent. The jury determined that Rush had incurred damages in the amount of $1,153,445; reduced to account for his negligence of twenty-five percent, see G. L. c. 231, § 85, he was awarded $865,083.75 before the addition of interest. As indicated, Colleen Rush received a judgment of $25,000 before interest for loss of consortium. Liberty Mutual paid in full the judgments entered against both defendants,[4] but did so in the name of Modern Continental alone.

Various claims for indemnification were reserved by agreement until the plaintiffs' claims were resolved. By means of a third-party complaint, Modern Continental asserted a claim for complete indemnification (judgment and defense costs) against Harding & Smith pursuant to the subcontract between those parties.[5] Harding & Smith in turn filed a fourth-party complaint seeking indemnification pursuant to its sub-subcontract with NEI.[6] As indicated, the judge allowed Modern Continental's indemnification claim only in part. In addition, he allowed Harding & Smith's claim against NEI for the same amounts for which Harding & Smith was found to be liable to Modern Continental.[7] Disputes regarding the amount of defense costs, including attorney's fees, have been settled, and all that remains is Modern Continental's contention that it has been deprived erroneously of full indemnification by Harding & Smith.

2. *The indemnification provisions.* Modern Continental's claim that it is entitled to full indemnification from Harding & Smith is based principally on paragraph 1.3 of the parties' subcontract.

[4]Consequently, Michael and Colleen Rush are not parties to this appeal.

[5]Because Modern Continental had already been held harmless by means of the payment by Liberty Mutual, Norfolk Electric's insurer, of the judgment against it, and because Liberty Mutual had provided Modern Continental a defense at its own expense, Modern Continental in fact had no exposure that required indemnification, and any amount it received pursuant to Harding & Smith's agreement to indemnify would instead benefit Liberty Mutual.

[6]Harding & Smith also filed a cross claim for contribution against Norfolk Electric. This claim was not adjudicated.

[7]There has been no appeal with respect to the order of indemnification against NEI. NEI has, however, participated in the present appeal in conjunction with Harding & Smith because it will be liable for whatever amounts Harding & Smith may ultimately be required to pay to or on behalf of Modern Continental.

Paragraph 1.3 appears in Article I, which is entitled "Work to be performed." That paragraph states in relevant part:

> "Subcontractor [Harding & Smith] does further agree to be bound to the General Contractor [Modern Continental] by the aforementioned General Contract Documents and all other instruments herein referred to and further to assume toward the General Contractor all the obligations and responsibilities pertaining to the work that the General Contractor by the aforesaid General Contract Documents has assumed to the owner including the furnishing of such warranties and guarantees as are required in the General Contract Documents *for the work of this subcontractor*" (emphasis in original).

The paragraph continues by providing that Harding & Smith shall, with respect to the work to which it committed itself, comply with all of the directives of Modern Continental, and extend to Modern Continental all of the rights, privileges, and immunities which the owner (the authority) enjoys under its contract with Modern Continental.

Pursuant to this language, according to Modern Continental, each and every part of the general contract applies to the plumbing work undertaken by Harding & Smith. This includes paragraph 6.29.1 of the said general contract which provides in relevant part:

> "To the fullest extent permitted by Laws and Regulations, the Contractor [Modern Continental] shall indemnify and hold harmless the Authority (the owner) and the CM [defined elsewhere as the construction manager] and their consultants, agents and each of their directors, officers and employees from and against all claims, damages, losses and expenses, direct, indirect and consequential (including but not limited to fees and charges of engineers, architects, attorneys and other professionals and court costs) arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use, and (b) is caused in whole or in part by any negligent act or omission of the Contractor,

70 Mass. App. Ct. 373 (2007)                377

Rush v. Norfolk Electric Company, Inc.; Harding & Smith, Inc; New England Insulation Company.

any Subcontractor, any person or organization directly or indirectly employed by any of them to perform or furnish any of the Work or anyone for whose acts any of them may be liable, regardless of whether it is caused in part by a party indemnified hereunder or arises by or is imposed by Laws and Regulations regardless of the negligence of any such party."

The language thus obligated Modern Continental to hold harmless and to indemnify the authority with respect to claims for personal injuries or property damage incurred in connection with the work performed by Modern Continental on the project if such personal injuries occurred, even in part, as a result of the negligence of Modern Continental or any person or entity for which it was responsible. By means of paragraph 1.3 of its subcontract with Harding & Smith, Modern Continental argues, it effectively obtained from Harding & Smith indemnification that is the equivalent of what Modern Continental provided to the authority in the event that the negligence of Harding & Smith or the negligence of those for whom it was responsible contributed in any way to losses or expenses suffered by Modern Continental. An undertaking by a subcontractor to indemnify for the entirety of a loss or expense notwithstanding that its negligence is only partially responsible is legally permissible. See G. L. c. 149, § 29C; *Herson* v. *New Boston Garden Corp.*, 40 Mass. App. Ct. 779, 788 (1996) ("§ 29C does not proscribe full indemnification when the conduct of the subcontractor is only a partial cause of the injury").

Nothing more appearing, the broad clause of the general contract (paragraph 6.29.1) that provides for full indemnification would apply to Harding & Smith, and would entitle Modern Continental to complete indemnification by virtue of the incorporation clause in paragraph 1.3 of the subcontract. Modern Continental incurred a loss as a result of the judgments against it obtained by Michael and Colleen Rush. That loss was attributable in part to the negligence of Michael Rush, who was found by the jury to have been twenty-five percent contributorily negligent with respect to his accident. Because Rush was employed at the time by NEI, and because NEI was a sub-subcontractor of Harding & Smith, there occurred a negligent act causing loss and

378                       70 Mass. App. Ct. 373 (2007)

Rush *v.* Norfolk Electric Company, Inc.; Harding & Smith, Inc; New England Insulation Company.

expense to Modern Continental for which Harding & Smith was responsible, thereby triggering its obligation to provide full indemnification.[8] See *Whittle* v. *Pagani Bros. Constr. Co.*, 383 Mass. 796, 799 (1981) (subcontract language imposes on subcontractor same obligation to indemnify contractor as that imposed on contractor under general contract with owner).

There is, however, another contractual provision that bears on the question. In the subcontract between Modern Continental and Harding & Smith, there appears a separate indemnification provision in paragraph 4.1:

> "To the extent permitted by law, the Subcontractor shall (1) fully indemnify and save the General Contractor wholly harmless from any and all claims, liabilities, liens, demands and causes of action for or on account of any injury to persons, damage to property, fines, penalties, assessments, or any loss of whatever kind or nature arising out of or in consequence of the performance of the Subcontractor's work hereunder, *but only to the extent caused in whole or in part by the acts or omissions of the Subcontractor, its subcontractors, anyone directly or indirectly employed by it, or anyone for whose acts it may be liable*" (emphasis in original).[9]

Paragraph 4.1 provides also that Harding & Smith will assume the defense "of any claim or action which may be brought against [Modern Continental], its officers, agents, servants or employees and shall reimburse [Modern Continental] for any attorney[']s fees and expenses incurred by [Modern Continental] with respect to any such claim."

The indemnification provisions differ in two respects, one being immaterial in this case while the other is of considerable

---

[8]That the negligence and resulting loss took place in connection with the performance of the work for which Harding & Smith contracted seems impossible to contest. The accident occurred while Rush was employed by NEI and while he was at the work site.

[9]An earlier draft of the clause contained the word "negligent" before the words "acts or omissions," so that the obligation to indemnify applied "only to the extent caused in whole or in part by the negligent acts or omissions of the Subcontractor" or those for whom the subcontractor was responsible. The word "negligent" was crossed out and the deletion initialed by the parties in the executed version of the subcontract.

significance. The indemnification language of the general contract (which, Modern Continental asserts, is applicable to Harding & Smith by virtue of the incorporation clause of paragraph 1.3 of the subcontract) calls for indemnification only when a loss is brought about, in whole or in part, by the negligence of the contractor or subcontractor. The indemnification language of the subcontract, on the other hand, triggers the right to indemnification in any instance in which the indemnitee incurs a loss as a result of any act or omission of the subcontractor regardless of whether such act or omission was negligent. See *Johnson* v. *Modern Continental Constr. Co.*, 49 Mass. 545, 547 (2000). The distinction is not meaningful in the present case because the act that is relied on to invoke either of the indemnification clauses was in fact a negligent act (i.e., the contributory negligence of the plaintiff, Michael Rush).

The important difference between the clauses is found in the scope of the respective indemnities. Under the general contract, the indemnitor, if liable at all, is liable for the entirety of any loss or expense incurred by the indemnitee. This is so even when, as here, the indemnitee is itself partly responsible for that loss or expense. See *Kelly* v. *Dimeo, Inc.*, 31 Mass. App. Ct. 626, 629-630 (1991). In contrast, the extent of the indemnification obligation under paragraph 4.1 of the subcontract is limited in that the indemnitor is responsible only "to the extent [that damages are] caused in whole or in part by the acts or omissions of the Subcontractor." That language reflects an intention of the parties "to limit a contractual indemnity obligation to losses caused by the indemnitor's conduct." *North Am. Site Developers, Inc.* v. *MRP Site Dev., Inc.*, 63 Mass. App. Ct. 529, 534 (2005). It follows that Modern Continental's rights are affected substantially by the choice of contractual indemnification provision because it will receive complete indemnification if the clause of the general contract is applied, but only proportional indemnification, and thus far less (if anything), if the clause of the subcontract controls.

Modern Continental argues essentially that the respective indemnification provisions are not in conflict because the clause in the general contract applies only when the indemnitor (here, Harding & Smith) has been negligent (in whole or in part),

while the clause in the subcontract applies where there is merely a nexus between the indemnitee's loss and the performance of the work of the indemnitor. See *Johnson* v. *Modern Continental Constr. Co.*, 49 Mass. App. Ct. at 547. Characterizing the clauses as "carefully drafted,"[10] Modern Continental asserts that they can, and should be, construed harmoniously; that each can be applied to the circumstances of this case; and that it is entitled to elect which of the provisions it prefers to enforce (obviously the provision of the general contract that obligates the indemnitor to provide complete indemnification).

We agree that Massachusetts law recognizes the validity of both negligence-based indemnification clauses, see *Kelly* v. *Dimeo, Inc., supra*, and act-based indemnification clauses, see *Johnson* v. *Modern Continental Constr. Co., supra*, and that there is no reason why parties may not, if they wish, adopt multiple indemnification provisions that are applicable in varying circumstances. However, we are not persuaded that that is what has taken place with respect to these contracts, and we are unable to identify the careful draftsmanship on which Modern Continental relies to make its case. On the contrary, what we see is a general contract replete with thrice-familiar, and often arcane, boilerplate provisions that surface again and again in construction transactions, together with a much briefer subcontract with an incorporation clause that, read literally, imposes on Harding & Smith each and every term of the general contract (most of which have nothing to do with the work of a plumbing subcontractor). Furthermore, the economic relationships make it unlikely that there were comprehensive efforts to rationalize the two instruments, given that the general contract would presumably be influenced primarily by the needs and desires of the authority, while the subcontract would be influenced in large part by the preferences of Modern Continental. We observe also that Modern Continental's proposition that both clauses apply in the present case and that it is free to choose between them is inconsistent with its theory that the respective clauses were

---

[10]As evidence of careful draftsmanship, Modern Continental proffers the removal of the word "negligent" from the original version of paragraph 4.1 of the subcontract, suggesting that this was consistent with the objective of making paragraph 6.29.1 of the general conditions and paragraph 4.1 of the subcontract applicable to different situations.

carefully drafted to deal with different situations. Consequently, we reject the argument that the two indemnification provisions can be interpreted harmoniously, and agree with the motion judge that the clauses are in conflict.

Once that determination is made, we conclude that the resolution of the conflict adopted by the motion judge is the correct one. Specifically, the judge applied the so-called "conflicting clauses" rule, see *Lembo* v. *Waters*, 1 Mass. App. Ct. 227, 233 (1973), quoting Corbin, Contracts § 547, at 176 ("If the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should generally be held to operate as a modification and pro tanto nullification of the former"). Identifying the indemnification provision in paragraph 4.1 of the subcontract as the clause "more limited and specific in its coverage," the judge ruled that that clause controlled and superseded the indemnification provision of the general contract to the extent that the clauses were inconsistent.

Modern Continental objects to the choice. It argues that, even if it is assumed that the clauses are in conflict, it is the clause in the general contract that is more narrowly tailored because it applies only when the indemnitor has been negligent, while the clause in the subcontract applies when there is any nexus between the indemnitor's work and loss to the indemnitee. We think otherwise. The indemnification provisions of the subcontract appear in an instrument bargained for and executed by the actual parties affected (Modern Continental and Harding & Smith). The indemnification provisions of the general contract were not bargained for by Harding & Smith, and became operative against that party only by means of an incorporation clause that, read literally, devours an elephantine agreement not of Harding & Smith's making, and one that deals with many subjects with which Harding & Smith had no involvement. The incorporation clause does not mention indemnification. We have no difficulty in determining that the specific indemnification provision of the subcontract controls.[11]

3. *Proportional indemnification.* The operative indemnity

---

[11]We find further support for this conclusion by looking only at the subcontract and comparing its indemnification clause with its incorporation

382                             70 Mass. App. Ct. 373 (2007)

Rush v. Norfolk Electric Company, Inc.; Harding & Smith, Inc; New England Insulation Company.

language of paragraph 4.1 of the subcontract limits Harding & Smith's obligation to indemnify to damages incurred by Modern Continental "to the extent caused in whole or in part" by Harding & Smith or a person or entity for which it is responsible. That language limits the indemnity obligation to losses caused by such parties' conduct. See *North Am. Site Developers, Inc.* v. *MRP Site Dev., Inc.*, 63 Mass. App. Ct. at 534-535. Reasoning that the only conduct for which Harding & Smith was responsible was the contributory negligence of Michael Rush, an employee of its sub-subcontractor NEI, the motion judge ruled that Harding & Smith's proportional contribution to Modern Continental's loss was equal to the percentage of negligence of Michael Rush as found by the jury, or twenty-five percent. He then determined that, because Modern Continental had incurred no loss with respect to that twenty-five percent contributory negligence by virtue of the application of G. L. c. 231, § 85,[12] and the consequent reduction of the damage award, nothing was left to indemnify and Harding & Smith was not responsible for any portion of the judgment in favor of Michael Rush.[13]

The logic of this proposition seems unassailable. Application of the comparative negligence statute relieved the defendants, Modern Continental and Norfolk Electric, of a portion of the judgment equal to $288,361.25 before interest. Given that Modern Continental did not pay that sum, or any portion of it, there is

clause. Where the indemnification clause deals specifically with the subject matter at issue, and the general incorporation clause does not, the specific provision controls.

[12]General Laws c. 231, § 85, the Massachusetts comparative negligence statute, as amended through St. 1973, c. 1123, § 1, provides in relevant part: "Contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the total amount of negligence attributable to the person or persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made."

[13]As indicated above, the judge did not relieve Harding & Smith with respect to the judgment in favor of Colleen Rush because the judgment in her favor had not been reduced by her husband's contributory negligence. He also granted Modern Continental full indemnification with respect to its defense costs pursuant to the language of paragraph 4.1 of the subcontract. Harding & Smith has not appealed with respect to either of those determinations.

no basis for an indemnification with respect thereto. Once that amount is removed from the calculus, Harding & Smith's conduct produced no loss or expense to Modern Continental, and it has no indemnity obligation under the subcontract.

Modern Continental's attack on the judge's ruling in this regard is based entirely on its contention that he relied improperly on an inapplicable Rhode Island statute, see R.I. Gen. Laws § 6-34-1 (2006), that prohibits an indemnitee from obtaining indemnification for its own negligence and requires reduction of any award accordingly. See *Cosentino* v. *A.F. Lusi Constr. Co.*, 485 A.2d 105, 107 (1984). It argues that the Rhode Island statute embraces a public policy that differs from that of Massachusetts, which permits an indemnitee to receive full indemnification even where it is contributorily negligent, see G. L. c. 149, § 29C, and that the judge was diverted thereby to a conclusion that is at odds with Massachusetts law on the subject.

We think the argument misconstrues what the judge did. His reference to the Rhode Island statute took place in connection with his discussion of a Massachusetts Superior Court case[14] in which the judge applied that statute to reduce an indemnity in accordance with the percentage of the indemnitor's contributory fault. The discussion illustrated the concept; it was not intended to suggest that the Rhode Island statute required the result.[15] The judge relied, as he should have, on the language of the subcontract as interpreted in the *North Am. Site Developers* decision, *supra*, and awarded a proportional indemnification.

4. *Liberty Mutual recovery.* As set forth above, Liberty Mutual, as Norfolk Electric's insurer, accepted the defense of the plaintiffs' claims on behalf of Modern Continental, as well as its own insured, by virtue of Norfolk Electric's obligation to indemnify Modern Continental. When the plaintiffs obtained judgments, Liberty Mutual paid on behalf of both defendants (although it did so in the name of Modern Continental only). Harding & Smith and NEI challenge Modern Continental's

---

[14]Hanlon *vs.* Algonquin Builders, Inc., Superior Court, No. 91-CV-2234 (June 23, 1994).

[15]Indeed, the judge stated that the Hanlon decision was based on a statute rather than a contract, and that the outcome in that case was governed by Rhode Island, rather than Massachusetts, law.

claims for indemnification in this case, arguing that Modern Continental has in fact paid nothing with respect either to the judgments or the defense; there is thus no loss or expense to Modern Continental that requires indemnification; and any recovery will solely benefit Liberty Mutual.[16] The contention was not presented below in any meaningful way, and we are not obligated to pass on it. See *Fidelity Mgmt. & Research Co.* v. *Ostrander,* 40 Mass. App. Ct. 195, 200 (1996).

In any event, it is unclear to us why, if Modern Continental was entitled to indemnification for amounts paid, a party that paid those amounts could not justifiably claim reimbursement from the indemnitor on a subrogation theory. The indemnitor could argue in return that half of the payment was in fact made on behalf of a defendant (Norfolk Electric) that had no right of indemnification against Harding & Smith so that at most Liberty Mutual could receive back one-half of its payments. We need not decide the question on this record. For the reasons stated, Harding & Smith will pay nothing on the Michael Rush judgment anyway. To the extent that it will indemnify Modern Continental/Liberty Mutual for the Colleen Rush judgment and defense costs, Harding & Smith filed no claims of appeal from those portions of the judgment making those awards.

*Judgments affirmed.*

---

[16]In the Superior Court, Harding & Smith presented a different theory, specifically that, because its insurer, Legion Insurance Company, had entered insolvency proceedings and Harding & Smith was now insured and defended by the Massachusetts Insurers Insolvency Fund, see G. L. c. 175D, any indemnity payment received by Liberty Mutual would constitute an invalid payment by the Fund to benefit another insurer. See *Ferrari* v. *Toto,* 9 Mass. App. Ct. 483, 486 (1980). The motion judge concluded that the record was inadequate to support a decision in Harding & Smith's favor on the issue, and Harding & Smith has not pursued the question on appeal.